**UNITED STATES of America, Appellee,**

v.

**Sidney HEMSI, Defendant–Appellant.**

**No. 1106, Docket 90–1038.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1990.

Decided April 23, 1990.

Michael D. Pinnisi, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Helen Gredd, Asst. U.S. Atty., New York City, on the brief), for appellee.

Adina Schwartz, New York City (The Legal Aid Soc., Federal Defender Services

Unit, New York City, on the brief), for defendant-appellant.

Before KEARSE, CARDAMONE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Sidney Hemsi appeals from an order of the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge*, finding him to be suffering from a mental disease or defect rendering him incompetent to the extent that he is unable to assist properly in his defense, and committing him to the custody of the Attorney General for treatment and evaluation pursuant to 18 U.S.C. § 4241 (1988). On appeal, Hemsi contends that the court impermissibly found him incompetent solely on the basis of his comportment in the courtroom. We disagree and conclude that there is no basis for reversal.

## BACKGROUND

In September 1989, Hemsi was arrested and charged with having assaulted a federal officer with a deadly weapon, in violation of 18 U.S.C. § 111 (1988). The complaint charged that Hemsi, an occasional medical and psychiatric patient at the Veterans Affairs Hospital in Castle Point, New York ("VA Hospital") since July 1989, had engaged in assaultive behavior toward other patients and threats toward personnel at the VA Hospital, and that on September 23 he had mounted a violent and unprovoked attack with a metal rod on a VA Hospital police officer. Following a pretrial detention hearing, during which Hemsi's behavior included blowing kisses to the Assistant United States Attorney, the government moved to have Hemsi examined to determine his competence to stand trial.

The court appointed a psychiatrist, Dr. Naomi Goldstein, who examined Hemsi, spoke by telephone with members of his family, reviewed pertinent records of the Metropolitan Correctional Center ("MCC"), where Hemsi was then detained, and of the VA Hospital, and interviewed MCC staff members. Dr. Goldstein concluded that Hemsi suffered from a major psychiatric disorder, having some elements of schizophrenia and some elements of a manic-depressive or bipolar disorder. Her report stated that it was "only on rare, non-threatening occasions that he is able to maintain his composure," and that Hemsi was "disruptive, paranoid, and there is very substantial denial and rationalization, making it difficult for him to focus on his legal needs." Dr. Goldstein gave her opinion that Hemsi was not mentally competent to stand trial.

At a hearing, Dr. Goldstein testified, *inter alia*, that though Hemsi perhaps possessed an intellectual understanding of the charges against him, he had a very grandiose self-image and an impaired sense of reality. She stated that his psychiatric disorder substantially impaired his judgment and his behavioral controls. In her view, his illness prevented him from acting effectively on his intellectual understanding, and he would "not be able to cooperate rationally with his lawyer in his own defense." During Dr. Goldstein's testimony, Hemsi interrupted more than a dozen times with ad hominem attacks on her.

Hemsi did not present any expert psychiatric testimony on his own behalf. Hemsi testified, responding to a brief direct examination and to a cross-examination that was made lengthy by the fact that his responses were often rambling, confused, irrelevant, or incomprehensible. Some of his responses reflected the grandiose notions testified to by Dr. Goldstein. For example, he stated that when he visits Buddhist temples, the monks embrace him because he has a "golden aura." Hemsi concluded his testimony by suggesting that the court send the prosecutor to a psychiatric hospital so that Hemsi could help him.

Hemsi's attorney, John Byrnes, testified in support of Hemsi's competency. He stated that he had been able to obtain facts from Hemsi that might allow him to construct a defense on Hemsi's behalf. Byrnes acknowledged that Hemsi was a difficult client who sometimes focused on irrelevant matters, that he had not asked Hemsi's view as to whether or not Byrnes

should testify at the hearing, and that in general he was "not looking to [Hemsi] for judgment calls on this case." In response to a question from the court as to whether, in counsel's judgment, "Hemsi will assist properly in his defense," Byrnes testified:

Can he assist in his defense in terms of relating the events to me and in giving me help in that area which he has already done? The answer is yes.

Can he assist properly in his defense in terms of making all of the decisions that he should make? Whether he can do all of that rationally, whatever, I don't know whether I can answer that question.

At the close of the hearing, the district court found that Hemsi was suffering from a mental disease or defect, that he was able to understand the nature of the charges against him, but that he could not "assist properly in his defense." The court stated that proper assistance encompassed more than merely providing information and that it extended to comportment in the courtroom before a jury. The court noted that Hemsi's extended outbursts during the hearing strongly supported the view that he was not then able to provide proper assistance in his defense. Hemsi greeted the court's ruling with a profane and scatological barrage.

The court filed a written order stating that "it is hereby found that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense," and committing him to the custody of the Attorney General for hospitalization and evaluation for a reasonable period, not to exceed four months. This appeal followed.

## DISCUSSION

On appeal, Hemsi contends that the court impermissibly found him incompetent on the basis of his behavior in the courtroom. We disagree both with the suggestion that the court's decision was based solely on Hemsi's courtroom behavior and with the suggestion that a defendant's in-court behavior, to the extent that it is the product of a mental defect, may not be considered in determining his competence to stand trial.

■■■ Section 4241(d) provides that if, after a hearing, the district court

finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense,

the court shall commit him to the custody of the Attorney General for such period, not to exceed four months, as is necessary to permit treatment and an evaluation of the likelihood of his gaining the capacity to stand trial. 18 U.S.C. § 4241(d). The test of competency under this section is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam) (construing § 4241's predecessor, 18 U.S.C. § 4244 (1958)); *see United States v. Renfroe*, 825 F.2d 763, 766 n. 3 (3d Cir.1987) (standard under § 4241 is same as that under old § 4244). The inquiry involves an assessment of whether the accused can assist "in such ways as providing accounts of the facts, names of witnesses, etc." *United States v. Mercado*, 469 F.2d 1148, 1152 (2d Cir.1972). But it is not sufficient merely that the defendant can make a recitation of the charges or the names of witnesses, for proper assistance in the defense requires an understanding that is "rational as well as factual." *Dusky v. United States*, 362 U.S. at 402, 80 S.Ct. at 788. In making its assessment, the court may take account of a number of factors, including the defendant's comportment in the courtroom. *See, e.g., Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975) (evidence relevant to competency includes not only medical opinion but also the defendant's "irrational behavior" and "his demeanor at trial"); *United States v. Oliver*,

626 F.2d 254, 258–59 (2d Cir.1980) (district court properly relied in part on its own observations in assessing defendant's mental capacity to stand trial); *United States v. Sullivan*, 406 F.2d 180, 185 (2d Cir.1969) (same); *McFadden v. United States*, 814 F.2d 144, 147 (3d Cir.1987) (relying on defendant's conduct at competency hearing).

■ Further, we note that a defendant has the right under the Sixth Amendment to be present throughout his criminal trial. *Lewis v. United States*, 146 U.S. 370, 373, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892). Nonetheless, if he knowingly insists on misbehaving at trial to such an extent that his conduct is unduly disruptive, the trial judge ordinarily has the power to have him removed from the courtroom and to continue the trial in his absence until he promises to behave properly. *See Illinois v. Allen*, 397 U.S. 337, 346, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970). The premise of this power is that the defendant who knowingly and voluntarily chooses to so misbehave waives his right to be present at trial. When the defendant's misconduct is the result of a mental disease or defect, however, he cannot be said to have made an intelligent and voluntary choice. *Cf. Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966) ("it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial"). Thus, if the trial court were to conclude that the defendant's unduly disruptive behavior resulted from a mental disease or defect and was beyond his rational control, it would be forced to suspend or abort the trial. *See Drope v. Missouri*, 420 U.S. at 181–82, 95 S.Ct. at 908. These factors may properly be taken into account by the court in a pretrial competency hearing.

In light of all the authorities, it is clear that the district court did not err in considering Hemsi's behavior during the competency hearing as a factor relevant to his ability to participate properly in his own defense.

■ We think it also clear that the court did not base its incompetency ruling solely on Hemsi's behavior. In issuing its oral ruling at the conclusion of the hearing, the court reviewed the evidence and made its competency finding on the basis of "what has been brought to me in the course of this hearing." It made clear that its finding that Hemsi was suffering from a mental disease or defect was based on the evidence from Dr. Goldstein. Thus, though the court explicitly considered Hemsi's conduct throughout the hearing, it relied on the other evidence as well.

Finally, as to the merits, we conclude that the ruling that because of his mental disease or defect Hemsi was not able to assist properly in his defense was adequately supported by the record. As set forth in greater detail above, Dr. Goldstein opined that only on rare, nonthreatening occasions could Hemsi maintain his composure and that he was paranoid; she concluded that his major psychiatric disorder and his impaired sense of reality prevented him from focusing on his legal needs and from acting effectively on his intellectual understanding, and would prevent him from cooperating rationally in his defense. Even his own attorney, who testified in opposition to commitment, effectively disclaimed any view that Hemsi could make any rational decisions regarding the defense. Hemsi's own uncontrolled and irrational reactions at the hearing provided support for Dr. Goldstein's conclusion and for the court's finding.

## CONCLUSION

We have considered all of Hemsi's arguments on this appeal and have found them to be without merit. The district court's order of commitment is affirmed.