By: Owen F. Duffy, as Attorney-in-Fact,
for the above limited purpose only,
per authority received October 7 , 1999,
by facsimile.

Rita GLUZMAN, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 00 CIV. 2138 BDP.

United States District Court,
S.D. New York.

Dec. 7, 2000.

Daniel Meyers, New York, NY, Alan E. Untereiner, Mayer Brown & Platt, Washington, D.C., for Petitioner.

Cathy Siebel, A.U.S.A., United States Attorney's Office, White Plains, NY, for Respondent.

BARRINGTON D. PARKER, Jr., District Judge.

In this federal habeas corpus proceeding, Rita Gluzman challenges her incarceration following her conviction in January 1997 in this Court for the ax-murder and dismemberment of her estranged husband Yakov. See 28 U.S.C. § 2255. Specifically, at trial she was convicted of conspiracy to commit, and the actual commission of, the interstate domestic violence murder of her husband in violation of 18 U.S.C. §§ 371 and 2261(a)(1) (Counts 1 and 2); unlawful interception of wire communications in violations of 18 U.S.C. § 2511(1)(a) (Count 3); and unlawful use of a wire to intercept oral communications in violations of 18 U.S.C. § 2511(1)(b). In April 1997, Petitioner was sentenced to life imprisonment followed by five years supervised release and a $200 special assessment.

Ms. Gluzman was represented at trial by Lawrence Hochheiser, Esq., Michael Rosen, Esq., Felicia Reinhardt, Esq. and Dairmuid White, Esq. She appealed her conviction to the United States Court of Appeals for the Second Circuit. On appeal she was represented by Mr. Hochheiser, Mr. Rosen, as well as by Judd Burstein, Esq. Her conviction was affirmed in August 1998. United States v. Gluzman, 154 F.3d 49 (2d Cir.1998). She petitioned for a writ of certiorari and in that proceeding was represented by Allen E. Untereiner, Esq. Certiorari was denied in March 1999. Gluzman v. United States, 526 U.S. 1020, 119 S.Ct. 1257, 143 L.Ed.2d 353 (1999).

Ms. Gluzman now, with another set of lawyers—Daniel Meyers, Esq., Richard Reeve, Esq. and Margaret Ratner, Esq., (as well as Mt. Untereiner)—petitions for a writ of habeas corpus claiming that she was denied effective assistance of counsel at trial. Her post-trial lawyers, emboldened by the clarity of hindsight, devote most of the Petition to second guessing various difficult strategic and tactical problems faced at trial and at sentencing by Ms. Gluzman's skilled and experienced trial counsel who were confronted with a plethora of unhelpful facts, with federal law that criminalized Ms. Gluzman's conduct, as well as with committed and able professional adversaries from the United States Attorney's office.

The record herein belies new counsel's claim of ineffectiveness, since the conduct of trial counsel met and surpassed applicable constitutional standards. The Petition is facially meritless and raises no factual issues that bear exploration in an evidentiary hearing. See Newfield v. United States, 565 F.2d 203, 207 (2d Cir.1977). The government has accepted Petitioner's averments. No evidentiary hearing is required because, "the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255.

To prevail on a claim of ineffective assistance of counsel, a defendant is required to overcome a "strong presumption" that her attorneys' conduct was reasonable and to show that the representation accorded fell below an objective standard of reasonableness under prevailing professional norms and, in addition, must affirmatively demonstrate prejudice. Strickland v. Washington, 466 U.S. 668, 687–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In this context prejudice means "a reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different." Id. at 693–94, 104 S.Ct. 2052; accord Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994).

But the case law is clear that to satisfy the first prong of Strickland, a defendant

must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and the deficient performance so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052; *United States v. DiTommaso,* 817 F.2d 201, 215 (2d Cir. 1987).

 *Strickland* cautions that "there are countless ways to provide effective assistance in a given case" and that "even the best criminal defense attorneys would not defend the particular client the same way." 466 U.S. at 689, 104 S.Ct. 2052. Among the "virtually unchallengeable" tactical decisions left to the judgment of trial counsel are determinations regarding the defense strategy adopted at trial. *See United States v. Simmons,* 923 F.2d 934, 956 (2d Cir.) (defendant's displeasure with counsel's strategy does not establish ineffectiveness), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *United States v. DiTommaso,* 817 F.2d at 215 (lack of success of chosen strategy does not warrant judicial second-guessing). "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *Mason v. Scully,* 16 F.3d 38, 42 (2d Cir. 1994) (internal quotation omitted); *accord United States v. Smith,* 198 F.3d 377, 386 (2d Cir.1999) (reasonably made strategic calls do not support ineffective assistance claim); *United States v. Eisen,* 974 F.2d 246, 265 (2d Cir.1992) ("decisions that fall squarely within the ambit of trial strategy, ... if reasonably made, cannot support an ineffective assistance claim") (internal quotation omitted), *cert. denied,* 507 U.S. 998, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993). Accordingly, the reviewing court "may not use hindsight to second-guess [counsel's] strategy choices." *Mayo v. Henderson,* 13 F.3d at 533.

The Petition fails the first prong of the *Strickland* test since, as shown below, it essentially challenges various strategical and tactical decisions of trial counsel without proper acknowledgment of the fact that such decisions are, as the case law teaches, uniquely ill-suited to judicial second guessing and if, reasonable (as they are here), cannot support an ineffective assistance claim. *See Mayo v. Henderson,* 13 F.3d at 533.

Furthermore, the second prong of the *Strickland* test has not been met. Neither the Petition nor the supporting documentation comes close to showing that any errors of trial counsel—even assuming them to exist—were of sufficient seriousness as to deprive the defendant of a fair trial whose results could be considered reliable. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

The linchpin of the prejudice test is, of course, the government's case. *See Strouse v. Leonardo,* 928 F.2d 548 (2d Cir.1991). The government's evidence at trial showed that Gluzman painstakingly planned Yakov's murder in order to thwart Yakov's attempts to divorce her and pursue a relationship with another woman. Weeks in advance Gluzman, a successful scientist and businesswoman, recruited Zelenin to assist her in the murder by threatening to withhold assistance he believed necessary for him and his children to avoid deportation back to Kyrgistan. At Gluzman's direction security experts unwittingly planted a recording device on the telephone line in Yakov's apartment, and Gluzman surreptitiously retrieved and reviewed the tapes. She contacted other investigators about various bizarre schemes to disrupt Yakov's relationship with his girlfriend and sent threatening letters to Yakov's family in Israel.

In preparation for the murder, Gluzman took Zelenin to see Yakov's apartment. They went to the Home Depot, and following discussions, decided on and purchased the tools, including axes and saws, latex gloves, and clean-up items necessary to kill and dismember Yakov. Their first attempt to kill Yakov was thwarted when,

though they waited in his apartment all night, Yakov did not come home. A week later, on April 6, they succeeded in killing Yakov. Prior to entering Yakov's apartment, Gluzman used a pay phone to call the apartment and ensure it was vacant. She and Zelenin then entered the apartment and lay in wait. When Yakov came home, Gluzman and Zelenin set upon him with their axes. During the attack, Gluzman accidentally cut Zelenin with her ax. As Zelenin tended to his wound, Gluzman noticed that Yakov was still breathing, and repeatedly plunged a knife in his torso. Zelenin then dismembered the body while Gluzman cleaned the apartment.

The following day Zelenin was caught disposing of Yakov's remains in the Passaic River. Before Zelenin confessed, and even before the police knew who the victim was, Gluzman had fled. She successfully eluded the police for nearly a week, hiding out on the grounds and in a guest cottage of the Cold spring Harbor Laboratory, where her husband had been employed years earlier. During that week she had dyed her hair, switched the license plates on her car for ones she had stolen, and used aliases. She used a telephone calling card to call various international airlines, and at the time of her arrest had several foreign travel guides with her. These and other details were elicited at trial by the government from Zelenin who, pursuant to a cooperation agreement, was the government's principal witness.

■ New counsel claims that trial counsel should have imprinted mental incompetence and diminished capacity themes on these facts which reflect considerable rational and cognitive capacity. Specifically, Petitioner's first claim is that trial counsel was ineffective because they neglected to pursue a psychiatric evaluation of Ms. Gluzman to access her competence to stand trial, despite what is termed a "documentary history of severe mental illness." Under 18 U.S.C. § 4241, to demonstrate a lack of competence to stand trial the petitioner would have to demonstrate that she

was "suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature, consequence or the proceeding against him or to assist properly in his defense." *Id.*

■ The standard for determining whether a defendant is competent to stand trial is well-settled. "[T]he defendant must have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him." *United States v. Morrison*, 153 F.3d 34, 46 (2d Cir.1998) (internal quotation marks and citations omitted); *accord Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir.1995); *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir.1990).

Nothing in her Petition comes close to showing that she was unable to understand the proceedings against her or to assist in her defense. It was fair to assume that Mrs. Gluzman was highly upset and quite depressed over an impending divorce and the devastating effect on her lifestyle and her family's expectations that her husband's relationship with, and departure for, a younger mistress portended. Petitioner does not claim and has never claimed that she was unable to perceive, to cogitate, to communicate with counsel, or that she lacked the ability to understand the nature of the proceedings. Conspicuously absent from the Petition is any objective or substantial indication that around the time of the murder and the trial (and for that matter at any time) that she had been hospitalized for any mental illness, that she was receiving professional mental health counseling for any illness or that she was even under any medication.

■ In any event, "it is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797

F.2d 1146, 1150 (2d Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987); *accord United States v. Nichols,* 56 F.3d at 412, " 'Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.' " *Vogt v. United States,* 88 F.3d 587, 591 (8th Cir.1996) (quoting *Medina v. Singletary,* 59 F.3d 1095, 1107 (11th Cir. 1995), *cert. denied,* 517 U.S. 1247, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996)). Even " '[t]reatment with antipsychotic drugs does not *per se* render a defendant incompetent to stand trial.' " *Id.* (quoting *Sheley v. Singletary,* 955 F.2d 1434, 1438 (11th Cir.1992)).

Ms. Gluzman successfully ran a business in the months and years preceding the murder. She was under no psychiatric care, carefully planned the crime over a period of time, cleverly eluded the police, and apparently had no unusual interactions with her attorneys. Given these facts, a reasonable attorney would have had no reason to doubt her competence. Indeed, any such attorney would have known that a claim that Gluzman could not understand the proceedings and assist in her defense would never succeed, and would reasonably have chosen not to risk his or her credibility with the court by pursuing a motion doomed to failure. *See United States v. Hemsi,* 901 F.2d at 295. Since nothing in the record approaches satisfaction of the demanding standard imposed by 18 U.S.C. § 4241, failing to pursue a strategy that, even in hindsight, is little more than bare conjecture does not equate to constitutional ineffectiveness. Counsel are not ineffective for failing to pursue meritless claims.

■ Next, Petitioner claims ineffectiveness because counsel failed to pursue a defense based on an allegedly diminished mental state. Here, again, nothing in the record establishes that the Petitioner approaches the standard imposed by 18 U.S.C. § 17(a). That statute requires Ms. Gluzman to demonstrate, as an affirmative defense, the existence of a severe mental disease or defect that rendered her unable to appreciate the nature and quality of the wrongfulness of her acts. Section 17(a) also provides that "mental disease or defect does not otherwise constitute a defense."

■ The burden is on the defendant to prove insanity by clear and convincing evidence. 18 U.S.C. § 17(b). "[Congress] has eliminated all other affirmative defenses or excuses based on mental disease or defect." *United States v. Richards,* 9 F.Supp.2d 455, 457, (D.N.J.1998) (citing *United States v. Westcott,* 83 F.3d 1354, 1357–58 (11th Cir.), *cert. denied,* 519 U.S. 908, 117 S.Ct. 269, 136 L.Ed.2d 193 (1996)). Defendants may still introduce mental disease evidence for the purpose of negating the *mens rea* element of the offense, *see id.; United States v. Pohlot,* 827 F.2d 889, 897 (3d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988), but whether such evidence is admissible turns, in part, on whether the defense has proffered a link between the specific mental disease evidence at issue and the *mens rea* in dispute in the case. *See United States v. Childress,* 58 F.3d 693, 730 (D.C.Cir.1995), *cert. denied,* 516 U.S. 1098, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996); *United States v. Cameron,* 907 F.2d 1051, 1067 n. 31 (11th Cir.1990).

Nothing in the Petition suggests that this standard would have been met, or that any connection exists between any possible mental disease evidence and the *mens rea* at issue in the murder charge. Notably, the affidavit proffered by the psychiatrist who examined her years after the murder, and who presumably is fully conversant with her mental history, does not even credibly allege, much less document, that Ms. Gluzman suffered from any mental disease, especially one that was severe enough to render her unable to appreciate the nature, quality or wrongfulness of her acts.

Ms. Gluzman carefully avoids confronting the fact that any strategy of advancing psychiatric defenses would have required her to admit her participation in the murder, something that is inconsistent with her continued claim of innocence. *See e.g.,* 4/30/97 Transcript of Sentencing ("Sent. Tr.") at 18 ("Your Honor, I did not do it and I still say that in front of the world. I did not.") Indeed, she apparently to this day continues to refuse to admit her participation in her husband's murder, (*see* Petition Exh. C at 6), yet she faults her trial counsel for not pursuing defenses that would have required such an admission.

Moreover, even if Ms. Gluzman had been willing to pave the way for a psychiatric defense by admitting to taking part in the murder, that route would have been highly—indeed, foolishly—risky. To admit participation in the murder, with only flimsy arguments of insanity or lack of intent available to her, would have invited certain conviction. *See United States v. Diaz,* 176 F.3d 52, 113–14 (2d Cir.1999). It was perfectly reasonable for her counsel to forego that extremely dubious approach and instead attack the government's case head on by arguing as they did that the government's principal witness had a substantial motive to lie, that no tangible evidence placed her in the apartment and then arguing that the jury should have a reasonable doubt as to her guilt. *See Correll v. Stewart,* 137 F.3d 1404, 1411 (9th Cir.1998).

■ Petitioner next faults her trial counsel for not somehow requiring her to plead guilty despite her persisting and emphatic claim of innocence. Applying the first prong of the *Strickland* test to the plea stage, the Second Circuit held in *Boria v. Keane,* 99 F.3d 492 (2d Cir.1996), *cert. denied,* 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997), that effective assistance of counsel requires a defense attorney to provide his client with the benefit of counsel's professional advice concerning the "crucial decision" whether to plead guilty or go to trial. 99 F.3d at

496–97. Thus, failure to communicate a plea offer or to provide adequate advice about a plea offer will constitute substandard performance. *See id.* at 496–98. Adequate advice in this context means defense counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States,* 208 F.3d 41, 45 (2d Cir.2000) (citations omitted).

■ Under *Strickland*'s second prong, a petitioner must show, as an initial matter, a "reasonable probability" that, but for counsel's errors in considering or explaining a plea offer, the petitioner would have accepted the offer. *See Purdy,* 208 F.3d at 49; *Boria,* 99 F.3d at 497; *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir.1995); *see also Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). In making this prediction, courts have been skeptical of accepting a defendant's self-serving, postconviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney. *See Johnson v. Duckworth,* 793 F.2d 898, 902 n. 3 (7th Cir.), *cert. denied* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986).

Nothing in the Petition suggests that Petitioner ever wished to plead guilty. Our Constitution affords Ms. Gluzman the right to plead innocent—for any reason—and, as many criminal defendants chose to do, to put the government to its proof. Moreover it is difficult to see how she could pleaded guilty since her persistent claims of innocence would have rendered highly problematic her ability adequately to allocute in view of the requirements of Fed.R.Crim.P. 11.

■ In any event, this claim does not meet the standard articulated in *Strickland*. Most notably, as the government makes clear, no plea offer was ever extended to her or even discussed by the government. Where the government does not offer a plea, and where the client insists that she did not participate in the crime, a failure successfully to negotiate a plea does not amount to ineffective assistance of counsel.

Glaringly, Ms. Gluzman carefully avoids stating what conversation she *did* have with counsel about the evidence and her prospects, strongly suggesting that counsel *did* discuss the evidence with her, and did assess the strengths and weaknesses of the case, but were unable to shake her from her insistence on her innocence. *See United States v. Stantini*, 85 F.3d 9, 16 (2d Cir.1996) (post-conviction affidavit "conspicuously silent in several respects," including whether attorney counseled defendant inadequately with respect to advantages and disadvantages of guilty plea, and whether defendant was or could have been interested in a plea).

■ Finally, Ms. Gluzman claims that her trial counsel improperly compromised her defense by informing the jury in his opening statement that Ms. Gluzman was innocent and by pursuing lines of examination consistent with that representation. This claim raises no issues under *Strickland* since it is a quintessential tactical judgment left to the discretion of counsel. *See United States v. Leslie*, 103 F.3d 1093 (2d Cir.1997). In any event, it is difficult to see how trial counsel, could, in good faith, be blamed for advancing this defense since Petitioner also maintained throughout trial and, indeed, at sentencing that she did not kill her husband.

We have reviewed the petitioner's other grounds for habeas relief and similarly find them without merit. For the reasons stated herein and in the government's letter brief of April 21, 2000, the Petition is dismissed.

Gluzman has not made a substantial showing of a violation of her constitutional rights, and consequently, a Certificate of Appealability will not issue. *See* 28 U.S.C. § 2253, as amended by the AEDPA. *See generally, Lozada v. United States*, 107 F.3d 1011 (2d Cir.1997). This Court, pursuant to 28 U.S.C. § 1915(a)(3), certifies that any appeal from this Order would not be taken in good faith and this Court would deny *in forma pauperis* status. The Petition is dismissed. The Clerk of the Court is directed to enter a final judgment in favor of Respondent.

**SO ORDERED.**