### UNITED STATES of America

v.

### Malik FRAZIER a/k/a "Freak"

### No. 3:99 CR 270(CFD).

United States District Court, D. Connecticut.

Dec. 6, 2001.

---

Peter D. Markle, James I. Glasser, Karen L. Peck, Stephen C. Robinson, Deborah R. Douglas, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Michael Stanton Hillis, Dombroski Knapsack & Hillis, New Haven, CT, for Defendant.

## RULING AND ORDER RE: MENTAL COMPETENCY

DRONEY, District Judge.

This matter is before the Court to determine whether the defendant, Malik Frazier, is competent to stand trial. For the reasons set forth below, the Court concludes that the defendant is not competent to stand trial and orders him committed to the custody of the Attorney General for a period of three months.

### I. Background

On May 16, 2000, a federal grand jury returned a superseding indictment charging the defendant with conspiracy to possess with intent to distribute phencyclidine (PCP), in violation of 21 U.S.C. §§ 841(a)(1) and 846. On October 19, 2000, the defendant attempted to enter a change of plea. In light of the defendant's behavior at such proceeding, the Court *sua sponte* ordered that the defendant be evaluated for purposes of determining his competency. *See* 18 U.S.C. § 4241(a). The Court ordered an examination of the defendant's mental condition and scheduled a competency hearing.

Upon the direction of the United States Probation Office, the defendant underwent a psychiatric assessment by Paul Amble, M.D., on December 21, 2000. Dr. Amble submitted to the Court the report of his evaluation. On March 27, 2001, upon motion by the Government, the Court ordered an additional evaluation of the defendant. As a result, from April 18, 2001 through May 23, 2001, the defendant was placed into the custody of the Bureau of Prisons Federal Medical Center in Devens, Massachusetts. Mark Brooks, Ph.D. of psychology, prepared and submitted to the Court a report of his evaluations. On November 5, 2001, the Court held a competency hearing. On November 19, 2001, both parties submitted post-hearing briefs.

### II. Discussion

Title 18 sections 4241 and 4247 of the United States Code set forth the procedures for determining whether a defendant is competent to stand trial. The Court first must conduct a competency hearing in accordance with 18 U.S.C. § 4247(d). That section provides that the defendant

"shall be represented by counsel" and "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." Those requirements were satisfied at the hearing here.

■ After conducting a competency hearing, the Court must then make findings, by a preponderance of the evidence, concerning: (1) whether the defendant is "presently suffering from a mental disease or defect;" and (2) whether the mental disease or defect "render[s] him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). In other words, the Court must determine whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir.1990). In making this determination, the Court may consider "a number of factors, including the defendant's comportment in the courtroom." 901 F.2d at 295; *see Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

If the Court finds that the defendant is incompetent to proceed to trial, it must then commit the defendant to the custody of the Attorney General for "treatment in a suitable facility," for a "reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [the defendant] will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d)(1). This period of time may be extended under 18 U.S.C. § 4241(d)(2).

■ In this case, Dr. Amble, a board-certified forensic psychiatrist and Assistant Clinical Professor of Psychiatry at Yale University School of Medicine, conducted a psychiatric evaluation of the defendant and opined that the defendant is not competent to proceed to trial in that the defendant did not demonstrate a rational understanding of the charges against him and did not demonstrate a rational ability to assist in his own defense. Dr. Amble indicated that the defendant demonstrated deficits in understanding the charges against him, the maximum penalty, the alleged facts of the case, and the consequences of his negotiated plea. Further, noted Dr. Amble, the defendant required repeated prompting to remain on task, suggesting that he would be unable to follow testimony for errors and inaccuracies.

According to Dr. Amble, such deficits may result from cognitive impairment: Dr. Amble indicated that the defendant has a baseline level of cognitive functioning, classified as "borderline intellectual functioning." Dr. Amble also opined that such deficits may also arise from a mental illness such as a psychotic and/or depressive illness.[1] Specifically, according to Dr. Amble's report, the defendant acknowledged experiencing hallucinations, hearing voices, and having psychotic symptoms, and pro-

---

1. Dr. Amble's report was in part based on an evaluation by Dr. Caroline Easton, a licensed clinical psychologist at the Yale University School of Medicine. Her evaluation also found the defendant to have a borderline level of intellectual functioning and depressive symptoms. Dr. Easton also testified at the competency hearing that the defendant endorsed having suicidal and homicidal thoughts and had difficulties orienting to person and time. Dr. Easton testified that her evaluation did not reveal the defendant to be malingering, i.e. feigning illness.

vided responses to tests that were consistent with a psychotic illness. The defendant also acknowledged having paranoid beliefs. At the competency hearing, Dr. Amble testified that the defendant exhibited symptoms of a thought disorder, such as schizophrenia. Further, Dr. Amble's review of Dr. Brooks' notes from evaluations of the defendant at FMC Devens revealed that a preliminary diagnosis of paranoid schizophrenia had been made.[2] Additionally, in both his report and testimony, Dr. Amble concluded that the defendant's mental illness or defect could be treated such that the defendant will have an improved ability "to attend to his legal matters, appreciate and understand the charges against him, and be able to assist his attorney in his defense."

Dr. Brooks, of FMC Devens, also conducted a Forensic Mental Health evaluation of the defendant pursuant to this Court's order on March 27, 2001 granting a motion by the Government for an additional evaluation of the defendant. In his report, Dr. Brooks indicated that the defendant presented "curious and conspicuously unlikely contradictions in report symptoms," including contradictions in whether or not he was experiencing auditory and visual hallucinations. Further, though the defendant indicated that he was "feeling down," Dr. Brooks found that the defendant did not endorse other depressive symptoms or mental health concerns. Dr. Brooks also observed the defendant's "variability in presented communication ability" and concluded that such was due to an "intentional and willful refusal to communicate and to participate in the present examination." Dr. Brooks also indicated that, due to the defendant's unresponsiveness, he was unable to make "a substantive evaluation" of the defendant's understanding of his case, court procedures in general, the roles of courtroom personnel, his willingness and ability to assist counsel, and his ability to integrate and weigh relevant information so as to make rational decisions. Nonetheless, in his report, Dr. Brooks ultimately concluded that the defendant was "not presently suffering from a mental disease or defect which renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense." However, at the competency hearing, Dr. Brooks retracted this conclusion and stated that he did not have enough information to make such a conclusion. Further, Dr. Brooks stated that the defendant "did not specifically or explicitly manifest or exhibit those specific functional capacities that would prove that he was competent to stand trial." Dr. Brooks also indicated at the competency hearing that no cognitive tests were performed on the defendant as part of Dr. Brooks' evaluation and that he did not perform tests to rule out malingering.

The defendant, in his post-hearing memorandum, accepts Dr. Amble's conclusions concerning the defendant's incompetence to stand trial. The Government, however, asserts in its post-hearing memorandum its position that the defendant is competent to proceed to trial and that Dr. Amble's report is insufficient to support a finding of incompetency. The Government specifically contends that Dr. Amble's report was generated after spending very little time with the defendant and that Dr. Amble's independent investigation of the defendant was extremely limited. Further, the Government contends that the

---

**2.** At the competency hearing, Dr. Brooks testified that he thought the diagnosis of paranoid schizophrenia, made by Dr. James Fletcher, a psychologist at FMC Devens, was incorrect.

defendant's borderline intellectual functioning does not mean he is incompetent to stand trial, and that Dr. Amble did not do a diagnostic assessment of the defendant to determine what type of mental illness the defendant might be suffering from.

The Government also argues that, even assuming the defendant suffered from some form of mental illness and possessed "borderline intellectual functioning," these mere facts do not render him incompetent to plead guilty. *See Gluzman v. U.S.*, 124 F.Supp.2d 171, 176 (S.D.N.Y.2000) ("[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.") (internal quotations omitted); *see also Newfield v. U.S.*, 565 F.2d 203 (2d Cir.1977) (finding a defendant suffering from chronic undifferentiated schizophrenia competent to stand trial); *U.S. v. Simmons*, 993 F.Supp. 168 (W.D.N.Y.1998) (finding a paranoid schizophrenic previously acquitted by reason of insanity competent to stand trial). Furthermore, asserts the Government, a medical opinion that the defendant is malingering provides a strong basis for a finding of competency. *See U.S. v. Gigante*, 166 F.3d 75 (2d Cir.1999) (upholding a district court's reliance on two reports concluding that the defendant was malingering, despite four other experts' conclusions that the defendant was incompetent). The Government urges the Court to focus on Dr. Brooks' findings regarding the defendant's "variability in presented communication ability" and conclusion that such was due to an "intentional and willful refusal to communicate and to participate in the present examination." In addition, the Government asserts that the defendant's ability to communicate clearly and rationally prior to the current proceedings is evidenced by audio recordings of his wiretapped conversations.[3] The Government also submits that the Court can infer from the defendant's criminal record and his repeated contact with the criminal justice system that he has a level of understanding of the system sufficient to support a finding of competency. Finally, the Government argues that failure of the defendant's trial counsel to suggest the defendant's incompetency before this Court *sua sponte* ordered an evaluation provides evidence of the defendant's competence.

Although the Court agrees that mental illness does not equate with incompetence to stand trial, *see United States v. Nichols*, 56 F.3d 403, 412 (2d Cir.1995), the Court concludes that the defendant presently suffers from a mental disease or defect that renders him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The Court credits the findings and conclusions of Dr. Amble's report and testimony at the competency hearing, as well as its own observations of the defendant's conduct throughout this case. Specifically, this Court credits Dr. Amble's findings that the defendant presented a cognitive ability just above mild mental retardation and exhibited symptoms consistent with psychotic illness. The defendant's mental disease or defect is reflected by, as Dr. Amble reported, the defendant's difficulties orienting to person and time, his observed distraction and depression, and his endorsement of hearing voices, experiencing hallucinations and having suicidal and homicidal thoughts. Such mental disease or defect, as Dr. Amble noted, "would not allow someone to continue and consistently deal in a rational way around the charges in court." The Court concludes that, because of the defendant's mental disease or defect, it is unlikely he will be able to consult with his lawyer with a reasonable degree of rational under-

---

**3.** These audio recordings were not introduced into evidence.

standing of the proceedings against him. As a result, the defendant's ability to participate in a defense strategy, provide his attorney with pertinent information, or provide relevant testimony in the case would be significantly impaired. The Court therefore concludes that the defendant is not competent to proceed to trial at this time.

The Court also credits Dr. Amble's conclusion that the defendant can be restored to competency with appropriate treatment and education. Accordingly, the Court orders the defendant committed to the custody of the Attorney General for a period of three months, pursuant to 18 U.S.C. § 4241(d)(1), for the purpose of determining whether there is a substantial probability that in the foreseeable future he will attain the capacity to proceed to trial.