260 F.3d 150 (2nd Cir. 2001)
 UNITED STATES OF AMERICA, APPELLEE,
v.
MICHAEL DESENA, AKA RICHIE BIGFOOT, KEVIN KIERNAN, AKA SIDEWAYS, ORLANDO R. PLACIDO, AKA RIPCORD, ANTHONY LAMBROS, AKA TONY INTENSE, RICHARD RECCHION, AKA RICKY MAGIC, ROBERT DESAUTELS, AKA BOBBY D, THOMAS VANDIVER, AKA TOMMY TRUCKER, AKA TRUCKER, LOUIS CANDELARIA, AKA B.C. ROCK, WILLIAM F. SHARPE, AKA TATTOO BILLY, ANTHONY ROMEO, AKA ECLIPSE, AKA FAT TONY, STEVEN DEFLORIO, AKA SARGE, THOMAS LADUCA, AKA TOM-TOM, KIRK PETERS, AKA EDWARD KICK, JAY A. CLANCY, AKA ONE-EYE JAY, AKA ONE-EYE, GABRIEL GIORDANO, AKA ANTHONY GARY, MICHAEL O'GARA, CHRISTOPHER SOCCI, AKA HOP SING, SALVATORE FIGLIOLIA, AKA STONE COLD, AKA SAL, ANTHONY DIBIASE, AKA TONY THE WIG, EVAN ROSENTHAL, AKA RAIN, NICHOLAS RAGNI, AKA JAMES A. MOOD, ROBERT J. BAUER, AKA BLUTO, PHILLIP PEPE, AKA PHILLY, MICHAEL CONNORS, AKA BAM-BAM, JORGE DUQUEN, AKA KATHLEEN M. HAWK, JOSEPH SERRANO, AKA PANHEAD JOE, PAUL BORRERO, AKA APACHE, PATRICK TORRES, AKA TACO, BRYAN WALTON, AKA AS POGO, SCOTT HALPHIN, AKA HOLESHOT, JOHN KOLAKOWSKI, AKA LOUDMOUTH, RALPH RUBINO, DEFENDANTS,
PETER A. MIHALITSIANOS, AKA SMOOTH, DEFENDANT-APPELLANT.
 No. 2303, Docket No. 00-1134
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: Sept. 27, 2000
Decided: Aug. 9, 2001
 
 [Copyrighted Material Omitted]
 Gary R. Brown, Assistant United States Attorney, Brooklyn, NY (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Susan Corkery and Leonard Lato, Assistant United States Attorneys, on the brief), for Appellee.
 Terrence P. Buckley, Law Office of Terrence P. Buckley, Esq., Islandia, Ny, for Defendant-Appellant.
 Before: Jacobs, Straub, Sack, Circuit Judges.
 
 Dennis Jacobs, Circuit Judge
 
 1
 Peter A. Mihalitsianos appeals from a judgment of conviction and sentence entered in the United States District Court for the Eastern District of New York (Hurley, J.). Mihalitsianos was convicted, after a jury trial, on five counts of a thirty-three count superseding indictment that charged him and seven co-defendants with criminal offenses arising out of the activities of the Pagans Outlaw Motorcycle Club.
 
 
 2
 Mihalitsianos challenges his conviction and sentence on numerous grounds. As to Count One, which charged a conspiracy from January 1994 to April 1998 to assault members of the Hell's Angels with dangerous weapons in violation of 18 U.S.C. § 1959(a)(6), we reverse on the ground that the evidence was insufficient. The conviction rests chiefly on Mihalitsianos' membership in the Pagans, which is indisputably an affinity group with purposes and interests that are not predominantly criminal. The evidence of membership was supplemented by other evidence that, for reasons stated in this opinion, is insufficient to preserve the conviction.
 
 
 3
 We reject Mihalitsianos' challenges to the remaining four counts of conviction, as well as his arguments as to why his sentence on those counts should be vacated, except to the extent Mihalitsianos argues that the district court erred in refusing to downwardly depart to a lower Criminal History Category, which portion of the appeal we dismiss for lack of jurisdiction.
 
 BACKGROUND
 
 4
 The charges against Mihalitsianos arose out of his involvement with the Pagans Outlaw Motorcycle Club (the "Pagans"). According to the government, the Pagans is an organization that, in addition to its legitimate pursuits, is involved in racketeering activities, such as murder, arson, extortion and robbery. Under the government's theory, much of the Pagans' illegal conduct is connected to an ongoing war between the Pagans and a rival motorcycle club, the Hell's Angels.
 
 
 5
 The superseding indictment charged Mihalitsianos with five counts: conspiracy to assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(6) (Count One); threatening to commit a crime of violence in violation of 18 U.S.C. § 1959(a)(4) (Count Ten); attempted arson in violation of 18 U.S.C. § 844(i) (Count Seventeen); possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Count Twenty-Five); and possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) (Count Thirty-Three).
 
 
 6
 The evidence at trial established that Mihalitsianos was a member of the Pagans in October 1992. In mid-1994,[1] Mihalitsianos was expelled because of his drug use. In November of 1994, Mihalitsianos and another Pagan unsuccessfully attempted to burn down a restaurant called Chilly Willy's in West Hempstead, New York, in which the Hell's Angels were scheduled to party the following day. By 1996 Mihalitsianos had been asked to leave the Pagans three times. There was evidence that in late 1996 or early 1997 Mihalitsianos was attempting to regain admission and, specifically, that he participated in a robbery to curry favor with the leader of the Pagans. Additional evidence sheds light on Mihalitsianos' involvement with the Pagans and will be discussed infra in connection with Mihalitsianos' claims of evidence insufficiency.
 
 
 7
 The jury convicted Mihalitsianos on Counts One, Ten, Seventeen and Twenty-Five. As to Count Thirty-Three, Mihalitsianos elected to have the jury determine whether he possessed a weapon and whether the weapon met the interstate commerce element of 18 U.S.C. § 922(g)(3), and to have the district judge determine at the sentencing hearing whether he was an "unlawful user" of a controlled substance for purposes of that provision.
 
 
 8
 After the verdict but before sentencing, Mihalitsianos moved pursuant to Fed. R. Crim. P. 29(c) for a judgment of acquittal on Counts One, Ten, Seventeen and Twenty-Five. In a January 11, 2000 Memorandum and Order, the district court denied Mihalitsianos' motion as to Counts Ten and Seventeen, and reserved decision on Count One pending oral argument. See United States v. Mihalitsianos, No. 98-CR-399 (E.D.N.Y. Jan. 11, 2000). The written order inadvertently omits any discussion of Count Twenty-Five. Immediately before the sentencing hearing, the district court denied Mihalitsianos' Rule 29(c) motion as to Count Twenty-Five and entered a conviction on Count Thirty-Three. After oral argument on whether the evidence in the record supported Mihalitsianos' conviction for conspiracy, the district court denied Mihalitsianos' Rule 29(c) motion with respect to Count One as well.
 
 
 9
 Mihalitsianos was principally sentenced to 36 months of imprisonment on Count One; 48 months on Count Ten (to run consecutively with Count One); 84 months on both Count Seventeen and Count Thirty-Three (concurrent with Counts One and Ten); and 60 months on Count Twenty-Five (consecutive to the sentences imposed on Counts One, Ten, Seventeen and Thirty-Three), for a total sentence of 144 months of imprisonment.
 
 
 10
 On appeal, Mihalitsianos makes several challenges to his conviction and sentence. As to his conviction, Mihalitsianos argues that: (a) the evidence was insufficient to support his conviction on any of the five counts beyond a reasonable doubt; (b) various hearsay statements offered as to Count Seventeen (arson) were improperly admitted; (c) his omnibus motion alleging several grounds for reversal should have been granted; (d) the prosecutor committed misconduct; and (e) the district court erred in the jury charge, the denial of defendant's Rule 29 motion, the admission of certain testimony at trial, and in other respects.
 
 
 11
 As to his sentence, Mihalitsianos argues that: (a) the district judge improperly refused a downward departure from Criminal History Category IV to III; (b) the failure to give him an updated Pre-Sentence Report ("PSR") denied him due process; and (c) various other calculation errors were committed by both the Probation Department and the district court.
 
 DISCUSSION
 I. Sufficiency of the Evidence
 
 12
 A defendant challenging a conviction based on sufficiency grounds bears a heavy burden. See United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994). "When reviewing a conviction for an alleged insufficiency of evidence, this Court will view the evidence in the light most favorable to the government, [] construe all permissible inferences in its favor, resolve all issues of credibility in favor of the jury's verdict, and uphold a conviction if any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." United States v. Reyes, 157 F.3d 949, 955 (2d Cir. 1998) (quoting United States v. Brown, 937 F.2d 32, 35 (2d Cir. 1991), United States v. Weiss, 930 F.2d 185, 191 (2d Cir. 1991) and United States v. Puzzo, 928 F.2d 1356, 1357 (2d Cir. 1991) (internal citations, alterations, and quotation marks omitted)); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 A. Count One
 
 13
 Count One, which was narrowly drawn, charged Mihalitsianos with: "[c]onspiracy to assault members of the Hell's Angels with dangerous weapons, to wit: firearms, axe handles and motor vehicles, and to cause serious bodily injury, in violation of New York Penal Law Sections 105.10 and 120.10." The conspiracy allegedly ran from January 1994 to April 1998. It is not alleged that Mihalitsianos committed a substantive crime in furtherance of the conspiracy, only that he agreed to participate.
 
 
 14
 The government argues that Mihalitsianos' agreement to participate in the conspiracy is supported by evidence that: (a) the goals of the conspiracy were discussed at weekly meetings of the Suffolk chapter of the Pagans--to which Mihalitsianos belonged; (b) all Pagan recruits were told about the ongoing war with the Hell's Angels; and (c) Mihalitsianos was involved with the attempted arson at Chilly Willy's. Although the arson at Chilly Willy's was not alleged to be a crime in furtherance of the conspiracy, the government argued that Mihalitsianos' participation evidenced the requisite mens rea to harm members of the Hell's Angels. A careful review of the record reveals that the government failed to meet its burden with respect to Count One.
 
 
 15
 The elements of a conspiracy may be proved by circumstantial evidence. See United States v. Jones, 30 F.3d 276, 281 (2d Cir. 1994) (citing United States v. Provenzano, 615 F.2d 37, 45 (2d Cir. 1980)). The existence of the conspiracy itself was not challenged in this case. Where the existence of a conspiracy has been proved, "evidence sufficient to link another defendant with it need not be overwhelming and it may be circumstantial in nature." United States v. Head, 546 F.2d 6, 9-10 (2d Cir. 1976) (internal citation omitted).
 
 
 16
 Nevertheless, the prosecution must sufficiently prove the defendant's participation beyond a reasonable doubt. See Jones, 30 F.3d at 281-82. "[A] defendant who is simply present at the scene of a crime or who knew only of the existence and goals of [the] conspiracy is not thereby guilty of being a conspirator; the government must prove.... [that] the defendant knowingly joined and participated in the objectives of the conspiracy." Id. at 282 (internal citations omitted). Although proof of an express agreement is not required, there must be proof of "at least a tacit understanding between the parties to further the violation of the law." Id.
 
 
 17
 More specifically, to prove conspiracy under 18 U.S.C. § 1959(a)(6), the government is required to prove beyond a reasonable doubt "`that the defendant participated in the alleged enterprise with a consciousness of its general nature and extent.'" United States v. Rosa, 11 F.3d 315, 340 (2d Cir. 1993) (quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1192 (2d Cir. 1989)). The government must also demonstrate that the defendant participated in the conspiracy for the purpose of "gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity". 18 U.S.C. § 1959(a); see also United States v. Thai, 29 F.3d 785, 817 (2d Cir. 1994) (stating that the "government is required to prove... that the defendant's general purpose in committing [or conspiring to commit] the crime of violence was to maintain or increase his position in the enterprise"). This burden is satisfied "if `the jury could properly infer that the defendant committed [or conspired to commit] his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.'" Thai, 29 F.2d at 817 (quoting United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992)).
 
 
 18
 The government relies primarily on the testimony of Robert Desautels to prove that Mihalitsianos was aware of the conspiracy and agreed to participate in it. Desautels testified that when he became a prospect for the Suffolk chapter of the Pagans in October 1992--15 months before the conspiracy is alleged to have started--Mihalitsianos was also a member of the same chapter. As a prospect, Desautels was told by other Pagans (not Mihalitsianos) about an ongoing dispute with the Hell's Angels. He was told that if he ever saw someone wearing a Hell's Angels shirt he should "take the shirt or get the Hell's Angel. Any way [he] could." Desautels was also read the Pagans constitution. Desautels recalled attending Suffolk chapter meetings in 1992, at a time when Mihalitsianos was a fellow member of the chapter, and that the Hell's Angels were discussed at some of these meetings. The government asked Desautels: "[d]id you have any types of meetings when Smooth [aka Mihalitsianos] was in your chapter the first time that you were a Pagan?", to which Desautels responded yes, and then testified that at these meetings some of the subjects discussed included "[r]uns, parties, if anybody saw Hell's Angels, where Hell's Angels were hanging out, that type of thing."
 
 
 19
 None of this amounts to anything. In the context of rival motorcycle gangs, the talk of "war" and grabbing shirts would not remotely convey an ongoing campaign of assault with dangerous weapons and murder. But even assuming that Desautels' indoctrination amounted to induction into a criminal conspiracy, nothing links Mihalitsianos to it. Mihalitsianos did not participate in the indoctrination. He had already been a member for some unspecified period, so no inference is available that the state of war and shirt-grabbing existed whenever Mihalitsianos was inducted. And even assuming that the Pagans constitution was part of Mihalitsianos' induction, there is no evidence that its provisions reflect an agreement to assault members of the Hell's Angels.
 
 
 20
 As to the 1992 meetings attended by Desautels, there is no evidence that Mihalitsianos was present at any of them, let alone that Mihalitsianos was present or participated at the particular meeting or meetings at which there was discussion of the Hell's Angels. The meetings, which were held at various members' homes, were not held at Mihalitsianos' home or anywhere Mihalitsianos was staying.
 
 
 21
 There is no evidence at all of any meetings or discussions of the Hell's Angels in 1994 or later--during the time of the alleged conspiracy. And there is no available inference that Mihalitsianos was a loyal and active Pagan reliably attending the meetings of his Suffolk chapter; Mihalitsianos was thrown out of the Pagans "around the middle of 1994" (according to Desautels), a few months after the inception of the conspiracy.
 
 
 22
 The government largely relies on Mihalitsianos' membership in the Pagans to infer participation in the conspiracy to assault Hell's Angels. Even if Mihalitsianos had not been expelled early in the period of the charged conspiracy, membership alone would be insufficient. The Pagans was an affinity club with (at least some) non-criminal, collegial aspects, not altogether unlike a club of soccer fans. Prosecution witness Evan Rosenthal testified that, when he was recruited, the leader of the Suffolk chapter (Keith Richter, aka Conan) told him that members are not expected to commit crimes, but that if they do, they must pay a kickback to the club. There is no other evidence that members expected their fellow members to participate in criminal activity--against the Hell's Angels, or anyone else. In short, there is no evidence at all that Mihalitsianos agreed to be a part of the criminal conspiracy.
 
 
 23
 The government also cites, in aid of the conspiracy charge, Mihalitsianos' participation in the arson at Chilly Willy's. It is unclear, however, whether Mihalitsianos was a member of the Pagans when he attempted to burn down Chilly Willy's in November 1994; and the attempted arson is not itself charged as a crime in furtherance of the conspiracy. True, it is evidence that Mihalitsianos was in a state of mind to commit violence against the Hell's Angels, but even in conjunction with the testimony about weekly meetings in 1992 (in which the Hell's Angels were discussed), this is not enough to support a conviction on the charged conspiracy beyond a reasonable doubt. Mihalitisianos' conviction on Count One is reversed and his sentence (concurrent) as to that count is vacated.
 
 B. Remaining Counts
 
 24
 Mihalitsianos also mounts sufficiency challenges to Counts Ten, Seventeen, Twenty-Five, and Thirty-Three. Count Ten charged Mihalitsianos with threatening to commit a crime of violence in connection with a robbery at the Sayville Motel in January 1997 ("Sayville robbery").[2] The evidence showed that Mihalitsianos (at the time a former Pagan) aided Franklin Frank (a member) in the Sayville robbery with the goal of winning reinstatement. Frank testified that he told Mihalitsianos his participation in the robbery and a kickback of ten percent of proceeds to Richter (head of the Suffolk chapter) would help Mihalitsianos get back into the club. Frank also testified that Mihalitsianos agreed to this arrangement. According to Frank, he and Mihalitsianos went to the Sayville Motel and stole money and crack cocaine at gunpoint. Richter received a kickback from the robbery proceeds, and Frank and Mihalitsianos sold the crack they did not smoke themselves. The jury credited Frank's testimony and convicted Mihalitsianos of committing the Sayville robbery to gain readmission to the Pagans, in violation of 18 U.S.C. § 1959(a)(4). The evidence supports the jury's finding.
 
 
 25
 Counts Twenty-Five and Thirty-Three both stemmed from the Sayville robbery, during which Mihalitsianos allegedly possessed a firearm while committing a crime of violence (Count Twenty-Five) and while being an unlawful user of, or addicted to, a controlled substance (Count Thirty-Three). The jury found beyond a reasonable doubt that Mihalitsianos possessed a firearm during the course of the Sayville robbery, warranting a conviction on Count Twenty-Five, and the evidence in the record adequately supports this finding. At Mihalitsianos' request, the district judge (rather than the jury) found beyond a reasonable doubt that Mihalitsianos was, at the time he possessed the firearm, an unlawful user of crack cocaine, and convicted him on Count Thirty-Three. Again, this finding is adequately supported.
 
 
 26
 Count Seventeen charged Mihalitsianos with the attempted arson at Chilly Willy's on November 4, 1994. Joseph Spring and Gary Giordano both testified as to conversations they overheard between Richter and other members of the club regarding this incident. Spring testified that he overheard a conversation at a bar in 1996 or 1997 in which Richter was making fun of Mihalitsianos and a person called Fat Boy for the inexpert attempt, describing how they poured gasoline through a hose inserted in Chilly Willy's mail slot, only to have the gasoline flow back under the door into the street. Giordano described a Suffolk chapter meeting, sometime after 1997, in which Richter ridiculed Mihalitsianos and Fat Boy for the same incident, describing how the arrival of the police prevented them from igniting the gasoline. According to Richter, the arson was planned for the day before a Hell's Angels party at Chilly Willy's, as retaliation for previous shootings between the two groups.
 
 
 27
 Testimony by Joseph Whittaker, a county fire investigator who was on the scene the day of the arson attempt, corroborated Richter's accounts of the attempted arson. Richter's statements regarding the motive behind the arson were also corroborated by Whittaker's testimony that a flyer found at Chilly Willy's during the investigation advertised a pending Hell's Angels party.
 
 
 28
 Mihalitsianos challenges the admission of Richter's hearsay statements concerning the attempted arson at Chilly Willy's, and argues that without the hearsay, the evidence was insufficient to support his conviction on Count Seventeen.
 
 
 29
 The district court admitted the testimony as to Richter's statements under Fed. R. Evid. 801(d)(2)(E), which excludes from the definition of hearsay "statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy." Objections to the admission of hearsay statements are reviewed for clear error. See United States v. Diaz, 176 F.3d 52, 83 (2d Cir. 1999); United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). "[T]he improper admission of such testimony is subject to harmless error analysis." United States v. Orena, 32 F.3d 704, 711 (2d Cir. 1994) (citing United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994)).
 
 
 30
 Hearsay statements are admissible under the coconspirator exception if the district court makes two findings by a preponderance of the evidence: "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." Gigante, 166 F.3d at 82. In determining whether a conspiracy existed, the district court may consider the hearsay statement itself, but "`there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" Id. (quoting United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996)).
 
 
 31
 Although we conclude that there is insufficient evidence in the record to support Mihalitsianos' conviction on the charged conspiracy beyond a reasonable doubt, "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment." Id. We conclude that it was not clear error for the district court to find by a preponderance of the evidence that a conspiracy existed between Richter and Mihalitsianos to set Chilly Willy's afire as part of the rivalry between the Pagans and the Hell's Angels.
 
 
 32
 "To be in furtherance of the conspiracy, a statement must be more than `a merely narrative' description by one co-conspirator of the acts of another." United States v. SKW Metals & Alloys, Inc., 195 F.3d 83, 88 (2d Cir. 1999) (quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1199 (2d Cir. 1989) (internal citations and quotation marks omitted)). Statements in furtherance of a conspiracy "prompt the listener... to respond in a way that promotes or facilitates the carrying out of a criminal activity." United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990). "[T]he statements need not be commands, but are admissible if they `provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy.'" SKW Metals & Alloys, Inc., 195 F.3d at 88 (quoting Maldonado-Rivera, 922 F.2d at 959).
 
 
 33
 Mihalitsianos argues that Richter's statements--relayed at trial by Spring and Giordano--were not made in furtherance of the conspiracy, and were merely joking references to a past event. We agree that it is difficult to construe casual storytelling in a bar, more than two years after the event, as anything but "mere idle chatter", and we conclude that Spring's hearsay account of Richter's conversation did not satisfy Rule 801(d)(2)(E). United States v. Paone, 782 F.2d 386, 390 (2d Cir. 1986). However, Richter's statements to fellow Pagans while presiding over a club meeting could be understood as informing other coconspirators about the status of the conflict between the two gangs, and perhaps as an exhortation to avoid ridicule by doing things right.
 
 
 34
 Even if Richter's statements, overheard by Spring, were not admissible under the coconspirator exception, any error was harmless because the statements could have been admitted as statements against interest. See Fed. R. Evid. 804(b)(3).[3] Richter invoked his Fifth Amendment right not to testify at Mihalitsianos' trial and thus was an unavailable witness under Fed. R. Evid. 804(a)(1); an admission to arson was contrary to Richter's penal interest; and the trustworthiness of Richter's statements was corroborated by the testimony of Joseph Whittaker, whose description of the scene of the arson the day of the crime (a) matched Richter's description of Mihalitsianos' actions and (b) substantiated the motive offered by Richter.
 
 
 35
 Having carefully reviewed the relevant portions of the transcript, we conclude that there was sufficient record evidence to support Mihalitsianos' conviction on Counts Ten, Seventeen, Twenty-Five and Thirty-Three.
 
 
 36
 We have also reviewed Mihalitsianos' arguments concerning his omnibus motion, as well as his numerous additional arguments raised for the first time on appeal, and, after careful consideration, find them to be without merit. The convictions on the remaining four counts are therefore affirmed.
 
 II. Sentencing
 
 37
 At sentencing, Mihalitsianos argued for two downward departures in Criminal History Category. One issue was resolved by stipulation, resulting in a departure from Criminal History Category V to IV. Mihalitsianos then argued that an additional downward departure to Category III was appropriate because his prior conviction for criminal mischief--a misdemeanor--did not warrant two criminal history points. Relying on U.S.S.G. § 4A1.3, Mihalitsianos argued that a criminal history category of IV overstates his past criminal conduct and the likelihood of recidivism.
 
 
 38
 Judge Hurley, recognizing that he could downwardly depart on this basis, respectfully declined to do so in the exercise of his discretion. Judge Hurley's refusal to downwardly depart is not reviewable on appeal because there is no indication that Judge Hurley mistakenly believed he lacked the authority to depart as a matter of law. See United States v. Chabot, 70 F.3d 259, 260-61 (2d Cir. 1995); United States v. Ritchey, 949 F.2d 61, 63 (2d Cir. 1991); see also United States v. Hargrett, 156 F.3d 447, 450 (2d Cir. 1998) (noting court also lacks jurisdiction "to entertain a challenge to the district court's explanation of the extent of [a downward] departure..., absent evidence that the district court misunderstood its authority to depart"). We therefore dismiss this portion of the appeal for lack of appellate jurisdiction.
 
 
 39
 To the extent Mihalitsianos raises on appeal arguments that were not raised at sentencing, these arguments are deemed waived in the absence of plain error. See United States v. Keppler, 2 F.3d 21, 23-24 (2d Cir. 1993). To meet the plain error standard, Mihalitsianos is required to demonstrate that the alleged errors affected his substantial rights resulting in manifest injustice. See id. at 24. The plain error standard is not met here and the remaining sentences are affirmed.
 
 CONCLUSION
 
 40
 For the foregoing reasons, we reverse Mihalitsianos' conviction on Count One (conspiracy to assault members of the Hell's Angels) for insufficient evidence, and vacate his (concurrent) sentence on that count. We dismiss that portion of the appeal challenging the district court's refusal to downwardly depart to Criminal History Category III. Mihalitsianos' convictions and sentences on the remaining four counts are affirmed.
 
 
 
 NOTES:
 
 
 [1]
 The exact month that Mihalitsianos left the Pagans is unclear from the testimony at trial and the parties were unable to say at oral argument.
 
 
 [2]
 The Sayville robbery was not an act in furtherance of the alleged conspiracy against the Hell's Angels and does not support Mihalitisianos' conviction on Count One. Mihalitsianos was not at the time a member of the Pagans and the victim was not a Hell's Angel.
 
 
 [3]
 Fed. R. Evid. 804(b)(3) excepts from the hearsay rule: "A statement which... at the time of its making... so far tended to subject the declarant to civil or criminal liability... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."