**UNITED STATES of America,**
**Appellees,**

v.

**Cory EDWARDS, also known as Wiggles, also known as Sealed Defendant #1, Anthony Jackson and Karo Brown, Defendants–Appellants.**

Nos. 04–6558–cr(L), 05–0232–cr(con), 05–0790–cr(con).

United States Court of Appeals,
Second Circuit.

Jan. 19, 2007.

Elizabeth S. Riker, Assistant United States Attorney (Glenn T. Suddaby, United States Attorney for the Northern District of New York, on the brief; John Katko, Assistant United States Attorney, of counsel), Syracuse, NY, for Appellee.

Tina Schneider, Portland, ME, for defendant-appellant Cory Edwards.

Debra A. Karlstein, Esq., New York, NY, for defendant-appellant Anthony Jackson.

Simon K. Moody, Esq., Williams, Heinl, Moody & Buschman, P.C., Auburn, NY, for defendant-appellant Karo Brown.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. ROBERT A. KATZMANN and Hon. B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

### I. Cory Edwards

Edwards alleges that the government breached its plea agreement and that the

plea was unknowing and involuntary, and also challenges his sentence.

### A. Challenges to the Plea

Edwards argues that the government breached the terms of his plea agreement by engaging in sentence advocacy and that his case should be remanded to the district court either for resentencing before a different judge, pursuant to *United States v. Vaval*, 404 F.3d 144 (2d Cir.2005), or for withdrawal of his plea. The government concedes its error and argues that, because *Vaval* governs, the appropriate remedy is remand for resentencing before a new judge. We agree with the government that this is not a case in which resentencing before a district judge "would not cure the 'taint[ ]' caused by a government breach—because, for example, the government violated the agreement by introducing new evidence that could not be 'magically erased or ignored on remand.' " *Id.* at 156 (quoting *United States v. Palladino*, 347 F.3d 29, 35 (2d Cir.2003)) (alterations in original). Accordingly, we remand this case for resentencing before a different district court judge in accordance with *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which was issued after Edwards's sentence was imposed. This remand moots Edwards' claim that he was provided with ineffective assistance of counsel at sentencing.

■ In a supplemental *pro se* filing, Edwards alleges that his guilty plea was involuntary because he was misinformed about his maximum sentence. Edwards asserts that his maximum sentence was twenty years, and not life, as the govern-ment informed him in his plea agreement and the court informed him at his plea allocution. Contrary to the government's representation at oral argument, a defendant convicted under the RICO statute "shall be imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)." 18 U.S.C. § 1963(a); *see United States v. Nguyen*, 255 F.3d 1335, 1343–44 (11th Cir. 2001) (holding that the maximum penalty for RICO is 20 years where "[t]he jury failed to find that any of the defendants had committed a predicate act that had a potential penalty of life imprisonment"). Although Edwards pleaded to a specific drug quantity exposing him to a life sentence under the RICO statute, his indictment did not specify any drug quantity.[1] Accordingly, there may be some merit to Edwards's claim that he was misinformed of his maximum sentence in violation of Fed. R. of Crim. P. 11.

Even assuming, without deciding, that a Rule 11 error occurred, we find such error to be harmless. Under Fed.R.Crim.P. 11, a court must, *inter alia*, "inform the defendant of, and ensure that the defendant understands, the maximum possible penalty that he faces prior to accepting his guilty plea." *United States v. Westcott*, 159 F.3d 107, 112 (2d Cir.1998). Rule 11 also provides that a "variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed.R.Crim.P. 11(h). In *Westcott*, this Court articulated "the test to determine in what circumstances a variance from Rule 11 would call for a vacatur of a guilty plea and in what circumstances such a variance

---

1. Edwards's indictment did include a murder charge, which under New York law carries a maximum sentence of life imprisonment. *See* N.Y. Penal Law §§ 70.00, 125.25. However, Edwards did not plead to any murder charge, either in his plea agreement or at his plea allocution. This Court has yet to address whether a RICO charge that includes a drug conspiracy requires a specified drug quantity to be included in the indictment irrespective of whether other predicate acts raise the statutory maximum.

would constitute harmless error." *United States v. Harrington*, 354 F.3d 178, 183 (2d Cir.2004) (citing *Westcott*, 159 F.3d at 112). Under that test, if "the misinformation in all likelihood would not have affected a defendant's decision-making calculus, then the error would be harmless, and the guilty plea need not be vacated." *Id.* at 184. Whether an error was in fact harmless "must be resolved on the basis of the record." *Id.* (quoting *Westcott*, 159 F.3d at 113).

There is no evidence in the record—and Edwards points to none—to suggest that he would not have taken the plea had he been correctly informed by the court that his maximum sentence was twenty years. Where, as here, a defendant alleges error in having been misinformed by the district court of a maximum sentence that was in fact *higher* than the correct maximum sentence, "we are particularly comfortable in requiring something more than the defendant's insistence that reversal is 'automatic.' The defendant must demonstrate that the misinformation mattered." *Westcott*, 159 F.3d at 113. This is particularly so where, as here, a number of factors strongly indicate that Edwards would not lightly have foregone the government's plea deal. To wit, the defendant was sentenced to a term of imprisonment well below even the lower maximum sentence that he alleges was allowable; the defendant earned a three-level reduction from his base offense level for acceptance of responsibility, which he would have foregone had he gone to trial; and, with the exception of one co-defendant who was convicted after trial, all of the codefendants named in the indictment pled guilty, and Edwards has "not provided any persuasive reason for doubting the strength of the government's case against him." *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir.2005) (listing factors, in an ineffective assistance of counsel case, important

to divining "whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different."). As Edwards has not "demonstrate[d] that the misinformation mattered," we find that the Rule 11 error was harmless.

Finally, Edwards "asserts that he wanted to go to trial all along, and that counsel continuously conveyed to him that he could beat the case because it did not constitute a RICO," and describes various other acts of "deception" attributable to his attorney. Because the record before us does not reveal the communications between Edwards and his attorney, we decline to adjudicate at this time any claims of ineffective assistance of counsel. *See United States v. Oladimeji*, 463 F.3d 152, 154 (2d Cir.2006) ("Where the record on appeal does not include the facts necessary to adjudicate a claim of ineffective assistance of counsel, our usual practice is not to consider the claim on the direct appeal, but to leave it to the defendant to raise the claims on a petition for habeas corpus under 28 U.S.C. § 2255.").

### B. Challenges to the Sentence

Because we vacate the sentence and remand for resentencing before a different judge, we decline to adjudicate Edwards's challenges to various aspects of the sentence previously imposed by the district court. We make two observations, however. First, in *United States v. Estrada*, 428 F.3d 387, 391 (2d Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1451, 164 L.Ed.2d 148 (2006), we reaffirmed the continued vitality of *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and noted that "it is not within the purview of the Courts of Appeal to anticipate whether the Supreme Court may one day overrule its existing precedent." *Estrada*, 428 F.3d at

390 (internal quotation marks omitted). Until such time as the Supreme Court chooses to revisit *Almendarez–Torres,* Edwards's *pro se* argument—that a prior criminal history sentence enhancement based on the judge's fact-finding is unconstitutional—is foreclosed. Second, Edwards's claim that he did not allocute to any specific drug quantity at his plea proceeding and thus cannot be sentenced on the basis of unproven drug quantities appears to be mooted by our maximum-sentence discussion above: Because the lower maximum sentence in question—twenty years—was not tied to any particular drug quantity, whether or not Edwards allocuted to such a quantity is irrelevant, and any related error is harmless. Moreover, a district court is free to determine a sentence on the basis of an unproven drug quantity as long as the resulting sentence does not exceed the maximum authorized by the statute. *See United States v. Florez,* 447 F.3d 145, 156 (2d Cir.2006); *see also United States v. Sheikh,* 433 F.3d 905, 906 (2d Cir.2006) (holding that a district court may impose a sentence base on facts not alleged in the indictment provided that the fact-finding does not affect the maximum sentence authorized by statute).

## II. Anthony Jackson

We have reviewed the *Anders* brief submitted by Jackson's counsel and we conclude that, based on the record before us, there are no non-frivolous grounds for appeal.

By an order dated January 3, 2006, we denied without prejudice Jackson's ineffective assistance of counsel claim, noting that it was not appropriate for appellate review at that time, and that the defendant could pursue the claim in a future 28 U.S.C. § 2255 motion. In her *Anders* brief, Jackson's counsel notes a potentially viable claim regarding the voluntariness of Jackson's plea. Because that claim, like Jackson's ineffective assistance of counsel claim, involves matters not in the record before us, we conclude that the involuntariness claim is not appropriate for appellate review at this time, and that the defendant can pursue it in a future 28 U.S.C. § 2255 motion.

We therefore GRANT the government's motion for summary affirmance of Jackson's judgment of conviction and sentence. We GRANT Jackson's counsel's *Anders* motion to the extent that, on the record before us, there are no non-frivolous grounds for appeal; we DENY the *Anders* motion to the extent that counsel can continue to represent Jackson should he choose to raise his involuntariness and ineffective assistance of counsel claims in a § 2255 motion.

## III. Karo Brown

Brown challenges his conviction under RICO, certain evidentiary rulings made by the district court and various elements of his sentence.

### A. Challenges to Conviction

Brown principally argues that the evidence offered by the government at trial was insufficient to support a RICO conviction under 18 U.S.C. § 1962(d) because the government adduced insufficient evidence to prove that the Boot Camp Gang was a criminal enterprise within the meaning of 18 U.S.C. § 1961(4). On a challenge to the sufficiency of the evidence, this Court must affirm the conviction if "after drawing all permissible inferences in favor of the government, a rational trier of fact could find that every element of the crime was established beyond a reasonable doubt." *United States v. Pierce,* 224 F.3d 158, 164 (2d Cir.2000). We "defer to the jury's determination of the weight of the evidence ... and to the jury's choice of the

competing inferences that can be drawn from the evidence." *United States v. Velasquez,* 271 F.3d 364, 370 (2d Cir.2001) (internal quotation marks omitted).

Brown's argument that the Boot Camp Gang was not a criminal enterprise essentially rests on an assertion that it lacked the organizational infrastructure and decision-making apparatus required of a RICO enterprise. But as the government rightly notes, the existence of a RICO criminal enterprise "is oftentimes more readily proven by 'what it *does,* rather than by abstract analysis of its structure.' " *United States v. Coonan,* 938 F.2d 1553, 1559 (2d Cir.1991) (quoting *United States v. Bagaric,* 706 F.2d 42, 56 (2d Cir.1983)). In support of his argument that an organization must have some sort of hierarchy or decision-making framework in order to qualify as a criminal enterprise, Brown cites only one Third Circuit case, *United States v. Riccobene,* 709 F.2d 214 (3d Cir. 1983), upon which this Court has never relied. But even were we to impose such a limitation, there was ample evidence presented at trial regarding the coordination of efforts among gang superiors and underlings in service of their common goal of protecting a defined geographical territory from incursion by other drug dealers. Under our highly deferential standard of review for sufficiency of the evidence, we hold that the evidence presented at trial supports the jury's determination that the gang constituted a criminal enterprise within the meaning of RICO.

*B. Evidentiary Challenges*

■ Brown makes an array of challenges to the district court's evidentiary rulings. He first argues that the district court erred by allowing the government to admit into evidence certain statements by alleged co-conspirators Ridwan Othman and Rodney Hill without notice that such statements would be admitted at trial, in violation of Fed.R.Crim.P. 16, which requires that the government disclose the substance of certain relevant oral statements made by a defendant. This Court has repeatedly held, however, that oral statements made by defendants to persons other than known government agents are not discoverable. *See In re United States,* 834 F.2d 283, 286–87 (2d Cir.1987). Thus, there was no Rule 16 error in the admission of Othman's or Hill's testimony.

■ Brown makes a different evidentiary argument with respect to other statements by Othman and Hill, as well as statements by Corey Brumfield, Jahmal Morgan, Cheiron Thomas and Edward Thomas, by claiming that they were all erroneously admitted pursuant to the co-conspirator exception to the hearsay rule because (1) the Boot Camp Gang was not a conspiracy within the meaning of RICO; (2) the statements were not in furtherance of the conspiracy; (3) the statements did not prompt the listener to carry out criminal activity; and (4) the statements were not independently corroborated. In order to admit a statement into evidence under the co-conspirator exception to the hearsay rule, the government must establish by a preponderance of the evidence, "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante,* 166 F.3d 75, 82 (2d Cir.1999). A district court's findings on these two requirements will not be disturbed unless they are clearly erroneous. *Id.* As discussed above, we reject Brown's argument that there was insufficient evidence to find that the Boot Camp Gang was a RICO conspiracy, and we find sufficient evidence in the record to support the district court's determination that Othman, Hill, Brumfield, Morgan,

Cheiron Thomas and Edward Thomas were part of the RICO conspiracy.

Brown contends that the statements were not in furtherance of the conspiracy, but rather were "merely narrative description[s] by one co-conspirator of the acts of another," *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir.1999) (internal quotation marks omitted), and therefore outside the scope of the co-conspirator exception. Even from Brown's own representation of the content of his co-conspirators' statements, it is clear that each was made in furtherance of a conspiracy that used violence to exercise exclusive control over its turf in order to trade in crack and cocaine. The subject matter of the statements—shootings, the presence of other gang members in the area, retaliation against rival gangs, drug purchases and sales, the obligations and reputations of fellow gang members—is inextricably linked to the function and activity of the conspiracy as proven at trial. There was therefore no error in the district court's determination that these statements were made during the course of and in furtherance of the conspiracy.

Brown's argument that the statements did not prompt the listener to carry out criminal activity is made in conclusory fashion and finds no support in the record. As noted above, each statement Brown cites speaks to the predicate acts upon which the conspiracy conviction was based. We find no clear error in the district court's finding that these statements were "such as to prompt the listener … to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Maldonado–Rivera*, 922 F.2d 934, 958 (2d Cir.1990). Brown's final evidentiary argument—that there was no independent corroboration of the acts alleged in the co-conspirators' statements—fails because independent corrobo-

ration is not a requirement for admissibility under the co-conspirators exception to the hearsay rule. The case Brown cites, *United States v. Desena*, 260 F.3d 150 (2d Cir.2001), does not so hold. Rather, *Desena* holds only that "[i]n determining whether a conspiracy existed, the district court may consider the hearsay statement itself, but there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *Id.* at 158 (internal quotation marks omitted). There was substantial evidence in the record, independent of the co-conspirators' statements, to support the district court's determination that a RICO conspiracy existed and that Brown was a part of it. There is thus no error in the district court's decision to admit the co-conspirators' statements.

■ Finally, Brown contends that the district court erred in admitting Rodney Hill's testimony concerning a shooting incident and an unsolved murder, when neither had been alleged in the indictment as an overt or predicate act. He alleges that the government failed to provide him with notice that such evidence would be offered at trial, and that the probative value of that testimony was outweighed by its prejudice to his defense. Contrary to the government's representation in its brief that Brown's counsel failed to object to the admission of this testimony before the district court, the record makes clear that, in fact, he did object. Accordingly, we review the district court's evidentiary rulings for abuse of discretion, *United States v. Schultz*, 333 F.3d 393, 415 (2d Cir.2003) (quoting *Old Chief v. United States*, 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)), and will not overturn them unless we deem them "arbitrary or irrational." *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir.2004) (internal quotation omitted).

The district court acted within its discretion in admitting Hill's testimony over Brown's objection. Pursuant to 18 U.S.C. § 3500, the government provided Brown with a thorough list of witnesses' statements and documentary material to be used at trial. The list appears to have given Brown reasonable notice of the basic content of each witness's testimony, and the indictment placed Brown on notice that shootings and murders were among the predicate acts upon which the RICO charge was based. Moreover, the district court noted that, upon learning the details of Hill's testimony, the prosecution promptly disclosed them to Brown, giving counsel "adequate time to prepare for cross-examination." The testimony to which Brown objects therefore could not have surprised him, and Brown has not alleged with any particularity how his defense was prejudiced by the government's alleged failure to provide him more notice. Moreover, we find no abuse of discretion in the district court's determination, under Fed.R.Evid. 403, that the probative value of the testimony outweighed its prejudice to Brown. Again, because the predicate acts of the conspiracy charge included shootings and murders, testimony tending to prove these acts was material and admissible.

## C. Challenges to Sentence

Finally, Brown objects to two sentence enhancements imposed by the district court and the district court's failure to apply a mitigating role reduction. "When reviewing a district court's application of the Guidelines in the post-*Booker* era, we examine questions of law *de novo* and issues of fact for clear error." *United States v. Weisser*, 417 F.3d 336, 346 (2d Cir.2005).

▇ First, Brown argues that the district court erred in imposing a two-level enhancement for the use of "a person less than eighteen years of age to commit the offense," U.S.S.G. § 3B1.4 (2005), because the government failed to adduce sufficient evidence to support such a finding by the jury. Ample evidence supported the jury's finding beyond a reasonable doubt that Brown had used a minor to commit the conspiracy offense, and the district court appropriately enhanced Brown's sentence for such conduct. In particular, as the district court noted at sentencing, there was evidence in the record to support the jury's determination that Brown had encouraged or ordered Shaheem Grady to shoot a firearm, and that Grady was under eighteen years of age. Accordingly, we find no clear error in the jury's findings of fact or the district court's imposition of the enhancement.

▇ Second, Brown contests the district court's imposition of a two-level enhancement for possession of a firearm while engaged in the offense, pursuant to Sentencing Guidelines section 2D1.1(b)(1). This objection boils down to a rehearsal of Brown's arguments against the district court's finding that a RICO conspiracy did in fact exist, and the district court's admission of the testimony of Brown's co-conspirators. For the reasons discussed above, we reject these arguments. The record is riven with testimony that Brown and other Boot Camp Gang members were in possession of firearms during the course of the conspiracy, and thus there is sufficient evidence in the record to support the district court's determination that a "weapon was present" and that it was "connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 3 (2005). We find no clear error in this finding of fact or in the resulting sentence enhancement.

▇ Third, and finally, Brown contends that he was entitled to a two-level offense reduction under Sentencing Guidelines

**66**

section 3B1.2(b) for his "minor role in the combined drug trafficking activities of members of the Boot Camp Gang," principally because the government did not present evidence as to the actual amount of drugs Brown was alleged to have distributed or possessed. The "offense" for which the reduction is available is the RICO conspiracy as a whole, and not any individual predicate act. Moreover, the offense level reduction is available only if the defendant is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2(b). The district court's finding that Brown was at least as culpable as the average conspiracy participant finds much support in the record, which reveals that Brown was active in the Boot Camp Gang's violent activity and drug trade. We therefore find no error in the district court's decision not to reduce Brown's sentence.

## IV. Miscellaneous Arguments

We have considered all of the appellants' other claims and find them to be without merit.

## V. Conclusion

For the foregoing reasons, we AFFIRM the district court's acceptance of Cory Edwards's plea, and VACATE and REMAND for resentencing before a different district court judge and in compliance with *Booker.* We GRANT in part and DENY in part Anthony Jackson's counsel's motion to withdraw and GRANT the government's motion for summary affirmance of Jackson's judgment of conviction and sentence. We AFFIRM Karo Brown's judgment of conviction and sentence in all respects.