SUMMARY ORDER

Victor Wright appeals from a judgment ordered June 5, 2008 after his conviction by a jury on three counts of a five-count indictment, including: (i) conspiring to distribute one kilogram or more of heroin and 500 or more grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) (Count One), (ii) possession with intent to distribute one or more kilograms of heroin and 500 or more grams of cocaine in violation of id. §§ 812, 841(a)(1), and 841(b)(1)(A) (Count Two), and (iii) engaging in unlawful monetary transactions in criminally derived property worth more than $10,000 in violation of 18 U.S.C. § 1957 (Count Four). He was sentenced principally to mandatory, concurrent life sentences on Counts One and Two, and ten years’ imprisonment (to run concurrently) on Count Four. We assume the parties’ familiarity with the facts and the procedural history.
On appeal, Wright argues that:
(1) the district court abused its discretion by reversing upon reconsideration its order for a psychiatric examination;
(2) there was insufficient evidence to support his convictions for:
(i) disti’ibuting or possessing with intent to distribute one kilogx’am or more of heroin; and
(ii) engaging in an unlawful monetary transaction under 18 U.S.C. § 1957.
 As to the psychiatric evalxxation, the distx’ict court’s change of mind is unremarkable given that the initial decision (to order an examination) was equivocal and accompanied by expressions of doubt. Moreover, Wright repeatedly opposed the competency evaluation as unnecessary and, shortly after the oi'der, sent a three-page letter to the district coxmt objecting again, urging reconsidex’ation, and arguing that the x’ecord was “devoid of the *711 requisite finding[s] for ordering a competency assessment....” After receipt of the letter, the district judge entered a new order stating: “Upon reconsideration, based on all of the circumstances of this case, the Court determines that a mental competency evaluation is not necessary.”
A district judge shall order a competency hearing “if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.” 18 U.S.C. § 4241(a). “There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed ...” Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Instead, “[a] district court must consider many factors when determining whether it has ‘reasonable cause’ to order a competency hearing,” including the judge’s “own observations of the defendant’s demeanor.” United States v. Quintieri, 306 F.3d 1217, 1233 (2d Cir.2002). Ultimately, the test “is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.” United States v. Hemsi, 901 F.2d 293, 295 (2d Cir.1990) (quotations, citation, and alteration omitted).
We review a district court’s factual findings for clear error, United States v. Lopez, 547 F.3d 397, 399 (2d Cir.2008), and its decision to grant or deny a motion for reconsideration for abuse of discretion, cf. Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir.1998). “A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.” Transaero, 162 F.3d at 729 (quotations and citation omitted).
Here, the district judge had ample opportunity to assess Wright’s rationality and his ability “to understand the nature and consequences of the proceedings against him or to assist properly in his defense.” 18 U.S.C. § 4241(a). The reconsideration decision took account of at least five lengthy court conferences in which Wright appeared before the district judge (including one phone conference), the input of numerous lawyers, and Wright’s own submissions to the court. After consideiing these multiple appearances, the input of counsel, and Wright’s coherent written opposition to the order, the district judge’s findings concerning Wright’s need for a competence exam were not clearly erroneous and he did not abuse his discretion by reconsidering his order for a psychiatric evaluation.
Wright argues that there was insufficient evidence to support his convictions for: (1) distributing or possessing with intent to distribute one kilogram or more of heroin; and (2) engaging in an unlawful monetary transaction under 18 U.S.C. § 1957. The unlawful monetary transaction challenge alleges evidentiary deficiencies with respect to (i) the source of the funds used, and (ii) the affect on interstate commerce.
A defendant challenging the sufficiency of the evidence “bears a heavy burden.” United States v. Jackson, 335 F.3d 170, 180 (2d Cir.2003) (quotations and citations omitted). In evaluating a sufficiency of the evidence claim, the court must “view[ ] all of the evidence in the light most favorable to the government,” United States v. Aleskerova, 300 F.3d 286, 292 (2d Cir. 2002), “resolve all issues of credibility in favor of the jury’s verdict,” United States v. Desena, 260 F.3d 150, 154 (2d Cir.2001) *712 (quotations and citations omitted), and “credit[] every inference that the jury might have drawn in favor of the government,” United States v. Morrison, 153 F.3d 34, 49 (2d Cir.1998) (quotations and citation omitted). The court will not disturb a conviction unless no “rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” United States v. Bruno, 383 F.3d 65, 82 (2d Cir.2004) (quotations and citations omitted).

1. One Kilogram or More of Heroin

As to the amount of drugs possessed and distributed, Wright argues that the relevant testimony contained “discrepancies [that] were so significant that the jury had no rational basis” for reaching its conclusions. Accordingly, Wright seeks reversal of his conviction under 21 U.S.C. § 841(b)(1)(A) (requiring proof of at least one kilogram of heroin), modification to reflect a violation of id. § 841(b)(1)(B) (requiring proof of only 100 grams of heroin), and resentencing on the lesser count.
A government witness testified that he received “at least” a kilogram and a half of heroin from Wright during the time period in question. The same witness testified that Wright delivered 200 grams of heroin twice a week at most, and at least every other week, for approximately two months (from June to August 2001). The jury was free to credit this testimony and conclude that over the two-month period Wright made aggregate deliveries exceeding one kilogram. In addition, the witness testified that he mixed and cut the heroin provided by Wright so that each 200 gram shipment yielded up to five times that amount in saleable street drugs. If a criminal statute defines the amount of drug to include a mixture or substance, “then under the language of the statute the weight of the mixture or substance, and not the weight of the pure drug, is controlling.” Chapman v. United States, 500 U.S. 453, 460, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (quotations omitted) (interpreting the drug statutes in the sentencing context). Since the witness testified that he mixed and cut the heroin provided by Wright to produce an amount equal to five times the amount that was delivered, and the conviction concerns “1 kilogram or more of a mixture or substance,” 21 U.S.C. § 841(b)(1)(A)® (emphasis added), then a single delivery of 200 grams could satisfy the x-equired amount. For all of these reasons, and “crediting every inference that the jux-y might have drawn in favor of the government,” Morrison, 153 F.3d at 49 (quotations and citation omitted), Wright’s sufficiency challenge to the amount of heroin is rejected.

2. Unlawful Monetary Transaction

As to the unlawful monetary transaction conviction under 18 U.S.C. § 1957 (“ § 1957”), Wright argues that the government failed to show: (1) that he used funds derived from narcotics to pay for the transaction at issue (the automobile lease), and (2) that the transaction affected interstate commerce.
Section 1957 makes it an offense to “knowingly engage[ ] ... in a monetary transaction in criminally dex-ived px’operty of a value greater than $10,000 and ... dexdved from specified unlawful activity.” 18 U.S.C. § 1957(a); see generally United States v. LaSpina, 299 F.3d 165, 182 (2d Cir.2002). “[T]he term ‘monetary transaction’ means the deposit, withdx’awal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument ... by, through, or to a financial institution y(4)27” 18 U.S.C. § 1957(f)(1) (emphasis added). The term “financial institution” includes “a business engaged in vehicle sales, including automo.bile, airplane, and boat sales.” 31 U.S.C. § 5312(a)(2)(T); see 18 U.S.C. *713 § 1956(c)(6)(A) (explaining that “the term ‘financial institution’ includes ... any financial institution as defined in [31 U.S.C. § 5312(a)(2) ] or the regulations promulgated thereunder”).
Here, the government argued that the unlawful monetary transaction was Wright’s lease of a Cadillac Escalade from a New Jersey automobile dealer.

(i) The Source of Funds

To demonstrate a § 1957 violation, the government must prove, inter alia, that the money Wright used to lease the car exceeded $10,000 and was “derived from specified unlawful activity.” 18 U.S.C. § 1957. According to the government, the March 2000 lease of the Cadillac Escalade from a dealer in New Jersey constituted an unlawful monetary transaction under § 1957 because Wright paid $6,844.06 in cash at the time of the lease, apparently made timely monthly payments of $595.61 until his arrest in August 2001 (since he still had possession of the vehicle at that time), and made all of these payments with income derived from his drug trade. Under those circumstances, the total amount spent on the lease would be more than $16,000, an amount well over the $10,000 required by § 1957. Wright argues that there “was no basis for assuming that more than $10,000 was paid with criminal proceeds” because there was no evidence that he: (1) made his monthly payments in cash (which, if demonstrated, would provide a stronger link to the drug proceeds); or (2) lacked a source of lawful income that could have covered the payments.
We disagree. The government introduced evidence that Wright was a drug dealer who carried large amounts of cash in bags, that he paid over $6,800 in cash to the dealer in order to initiate the lease, and that he made monthly payments on the lease thereafter. Nothing in the record indicates that Wright had any legitimate source of income (though Wright had the opportunity to present evidence of such income during his defense). Under those circumstances, the jury was free to conclude that Wright engaged in a monetary transaction of over $10,000 with the proceeds of his crime.

(ii) Interstate Commerce

Section 1957 also requires the government to prove that Wright engaged in a transaction “in or affecting” interstate commerce. 18 U.S.C. § 1957(f). Wright contends that the government failed to meet this burden.
This Circuit has not explicitly addressed in a published opinion what standard applies when determining whether a defendant engaged in a transaction “in or affecting” interstate commerce under § 1957. However, with respect to the statute’s sister provision, 18 U.S.C. § 1956 (money laundering), the Circuit has stated that “[t]he requirement that the transaction ... affect[] interstate commerce means that proof of a minimal effect on interstate commerce is needed to support federal jurisdiction.” United States v. Leslie, 103 F.3d 1093, 1101 (2d Cir.1997) (quotations omitted) (emphasis added). The Fourth, Ninth and Tenth Circuits also apply some variation of the “minimum effects” test to cases arising under § 1957. See United States v. Ripinsky, 109 F.3d 1436, 1444, amended on other grounds, 129 F.3d 518 (9th Cir.1997); United States v. Aramony, 88 F.3d 1369, 1386 (4th Cir.1996); United States v. Lowder, 5 F.3d 467, 472 (10th Cir.1993). We conclude — without holding that the “minimal effects” test applies to § 1957 — that Wright’s challenge fails under any standard.
Wright’s automobile lease undoubtedly had an effect on interstate commerce. Although the record does not state where the *714 car was made or how it traveled to the dealership in New Jersey, it is undisputed that Wright is a New York resident who traveled interstate to lease the car, and that he entered into a financing arrangement with a dealer from the other state. These facts demonstrate more than a minimum effect on interstate commerce, which requires only “a potential or subtle effect.” United States v. Parkes, 497 F.3d 220, 230 (2d Cir.2007) (quotations and citation omitted) (clarifying the de minimis standard under the Hobbs Act, 18 U.S.C. § 1951). Accordingly, we reject Wright’s sufficiency challenge to the § 1957 conviction.
We have reviewed Wright’s remaining arguments and find them to be without merit. For the reasons stated above, the judgment of the district court is AFFIRMED.